J-A35026-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LEA ANN MYERS, | |
| Appellee | No. 428 WDA 2015 |

Appeal from the Order February 6, 2015
In the Court of Common Pleas of Butler County
Criminal Division at No(s): CP-10-CR-0001375-2014

BEFORE:  BENDER, P.J.E., SHOGAN, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 05, 2016**

The Commonwealth appeals from the order of the trial court granting the motion filed by Appellee, Lea Ann Myers, seeking to suppress all evidence obtained as a result of her vehicle stop.  We affirm.

We summarize the history of this case as follows.  At approximately 9:00 p.m. on June 8, 2014, Butler Township Police Officer Paul Kuss was patrolling in an unmarked cruiser when he noticed Appellee's vehicle make a turn behind him.  Officer Kuss turned around to follow Appellee and observed her vehicle allegedly exceeding the speed limit.  The officer increased his speed but lost sight of Appellee when he stopped at a traffic light.  Officer Kuss was unable to catch up to the vehicle to perform a measure of distance and time to ascertain Appellee's actual speed.  Officer Kuss eventually spotted Appellee's vehicle again and began to follow it.

While following Appellee's vehicle the second time, Officer Kuss claims he observed her car move onto or across the double yellow lines and the white fog line. Officer Kuss activated his emergency lights and sirens, and Appellee drove approximately one-half mile before pulling over. Appellee was charged with Driving on Roadways Laned for Traffic, pursuant to 75 Pa.C.S. § 3309(1); Driving Under the Influence, pursuant to 75 Pa.C.S. § 3802(A)(1); and Driving Under the Influence with a BAC of .16% or higher, pursuant to 75 Pa.C.S. § 3802(C).

On October 14, 2014, Appellee filed a motion to suppress evidence gained during the traffic stop. A suppression hearing was held on November 10, 2014. In an order dated February 6, 2015, the suppression court granted Appellee's motion to suppress. The order was docketed on February 12, 2015. On March 3, 2015, the Commonwealth filed a motion for reconsideration and a motion to vacate, which were denied on March 20, 2015. The Commonwealth initiated this appeal on March 10, 2015, noting that under Pa.R.A.P. 311(d), the order dated February 6, 2015, and docketed on February 12, 2015, substantially handicaps or terminates prosecution. Both the Commonwealth and the trial court have complied with Pa.R.A.P. 1925.

The Commonwealth presents the following issues, which we have renumbered for purposes of our review:

I. Did the Trial Court err in proceeding to conduct a probable cause analysis when the Appellee was only challenging the initial stop?

II. Did the Trial Court commit an error of law when it granted the Appellee's Pre-Trial Motion to Suppress by concluding that Officer Kuss did not have reasonable suspicion or probable cause that the vehicle or driver was in violation of some provision of the vehicle code to initiate a traffic stop of Appellee's vehicle?

Commonwealth's Brief at 1.

The Commonwealth first argues that, in addressing Appellee's motion to suppress, the trial court erred in conducting a probable cause analysis. Commonwealth's Brief at 8. The Commonwealth contends that "[b]ecause the Appellee only challenged the vehicle stop and not the cause for arrest after the vehicle was pulled over, the lower court only needed to use a reasonable suspicion framework." *Id*. We disagree with the Commonwealth's claim.

"The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code [("MVC")] is a question of law, over which our scope of review is plenary and our standard of review is *de novo*." *Commonwealth v. Holmes*, 14 A.3d 89, 94 (Pa. 2011). The MVC provides the following statutory authorization for a police officer to stop a motor vehicle:

Whenever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or

to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). However, this Court has explained the following:

[Section 6308(b)] requires only reasonable suspicion in support of a stop for the purpose of gathering information necessary to enforce the [MVC] violation. However, in **Commonwealth v. Feczko**, 10 A.3d 1285, 1291 (Pa. Super. 2010) (*en banc*), *appeal denied*, 611 Pa. 650, 25 A.3d 327 (Pa. 2011), this Court held that a police officer must have probable cause to support a vehicle stop where the officer's investigation subsequent to the stop serves no "investigatory purpose relevant to the suspected [MVC] violation." In **Feczko**, the police officer observed the defendant's vehicle cross over the double yellow median line and the fog line. **Id**. at 1286. During the ensuing vehicle stop, the officer noticed the scent of alcohol on the defendant's breath. **Id**. Importantly, the officer did not testify that the stop was based on suspicion of DUI. **Id**. The defendant was convicted of DUI and a [MVC] violation, and argued on appeal that the vehicle stop was illegal. **Id**. at 1287.

This Court noted the distinction between "the investigative potential of a vehicle stop based on a reasonable suspicion of DUI as compared to other suspected violations of the [MVC]." **Id**. at 1289 (citing **Commonwealth v. Sands**, 887 A.2d 261, 270 (Pa. Super. 2005)). Whereas a vehicle stop for suspected DUI may lead to further incriminating evidence such as an odor of alcohol or slurred speech, a stop for suspected speeding is unlikely to lead to further evidence relevant to that offense. **Id**. Therefore:

a vehicle stop based solely on offenses not "investigable" cannot be justified by a mere reasonable suspicion, because the purposes of a **Terry**[1] stop do not exist - maintaining the *status quo* while investigating is inapplicable where there is nothing further to investigate. An officer must have probable cause to make a constitutional vehicle stop for such offenses.

[1] **Terry v. Ohio**, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

- 4 -

[*Feczko*, 10 A.3d] at 1290 (quoting *Commonwealth v. Chase*, 960 A.2d 108, 116 (Pa. 2008)).

*Commonwealth v. Busser*, 56 A.3d 419, 423 (Pa. Super. 2012) (footnote in original).

Our review of the record reflects that on June 8, 2014, Officer Paul Kuss, of the Butler Township police department, stopped Appellee's vehicle due to an alleged violation of driving on a roadway laned for traffic and of exceeding the posted speed limit. Neither of these MVC violations allegedly witnessed by Officer Kuss required further investigation. Accordingly, in order to effectuate a legal stop of Appellee's vehicle, Officer Kuss would have needed to possess probable cause. *Busser*, 56 A.3d at 423. Thus, we conclude that the trial court utilized the appropriate standard in conducting its analysis, and the Commonwealth's contrary claim lacks merit.

The Commonwealth next argues that the trial court erred in granting Appellee's motion to suppress. Commonwealth's Brief at 5-7. The Commonwealth contends that Officer Kuss possessed the requisite reasonable suspicion to stop Appellee for violations of speeding under 75 Pa.C.S. § 3362 and driving within a single lane under 75 Pa.C.S. § 3309(1).

We have stated the following with regard to reviewing an order granting a defendant's motion to suppress evidence:

we are bound by that court's factual findings to the extent that they are supported by the record, and we consider only the evidence offered by the defendant, as well as any portion of the Commonwealth's evidence which remains uncontradicted, when read in the context of the entire record. Our review of the legal

- 5 -

conclusions which have been drawn from such evidence, however, is *de novo*, and, consequently, we are not bound by the legal conclusions of the lower courts.

***Busser***, 56 A.3d at 421 (quoting ***Commonwealth v. Wallace***, 42 A.3d 1040, 1048 (Pa. 2012)).

We begin our assessment of the trial court's decision to grant the motion to suppress by again noting that the trial court properly concluded that Officer Kuss was required to possess probable cause to justify the stop of Appellee's vehicle for violations of 75 Pa.C.S. §§ 3362 and 3309(1), as the stop did not "serve a stated investigatory purpose." ***Feczko***, 10 A.3d at 1291. In ***Feczko***, this Court held the following:

> "[m]ere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the [MVC]."

***Id***. at 1291 (citations, internal quotation marks, and emphasis omitted). Thus, because these two alleged violations do not require additional investigation, Officer Kuss was required to possess probable cause to make the stop, not merely reasonable suspicion. Therefore, we will conduct our review using the appropriate probable cause requirement.

"Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a

[person] of reasonable caution in the belief that the suspect has committed or is committing a crime." ***Commonwealth v. Thompson***, 985 A.2d 928, 931 (Pa. 2009) (quotation marks omitted).

> The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require **only a probability**, and not a *prima facie* showing, of criminal activity. In determining whether probable cause exists, we apply a totality of the circumstances test.

***Id***. (emphasis in original) (citations and quotation marks omitted). Pennsylvania law makes clear, however, that a police officer has probable cause to stop a motor vehicle if the officer observed a traffic code violation, even if it is a minor offense. ***Commonwealth v. Chase***, 960 A.2d 108, 113 (Pa. 2008).

The trial court concluded that Officer Kuss failed to prove that he had probable cause to believe that Appellee's vehicle had committed a violation of the MVC. As the Commonwealth correctly states, section 3362 of the MVC addresses maximum speed limits and provides, in relevant part, as follows:

> **§ 3362. Maximum speed limits.**
>
> **(a) General rule. --** Except when a special hazard exists that requires lower speed for compliance with section 3361 (relating to driving vehicle at safe speed), the limits specified in this section or established under this subchapter shall be maximum lawful speeds and no person shall drive a vehicle at a speed in excess of the following maximum limits[.]

75 Pa.C.S. § 3362(a).

In addition, the MVC defines the offense of roadways laned for traffic as follows:

**§ 3309. Driving on roadways laned for traffic**

Whenever any roadway has been divided into two or more clearly marked lanes for traffic the following rules in addition to all others not inconsistent therewith shall apply:

**(1) Driving within single lane. --**A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that the movement can be made with safety.

75 Pa.C.S. § 3309(1).

Our review of the record reflects that at the time Officer Kuss stopped Appellee's vehicle, he was not certain of the speed Appellee was actually driving or even the speed that Officer Kuss was driving himself. As the officer's testimony explains, he first encountered Appellee's vehicle when she was driving behind him and she turned onto a different road. N.T., 11/10/14, at 6. The officer stated that he was looking for vehicles to follow to see any violations. *Id*. at 15. Officer Kuss then decided to follow Appellee's vehicle, performed a U-turn, and attempted to catch up to Appellee. *Id*. at 6. In fact, Officer Kuss admitted that he was not using VASCAR at the time, and he did not clock Appellee's vehicle for three/tenths of a mile. *Id*. at 10, 16. Rather, Officer Kuss stated, "To me, my experience, this vehicle was going over the speed limit." *Id*. at 6. In addition, the officer testified that Appellee's vehicle "seemed to be exceeding

the speed limit." *Id*. at 10. Interestingly, when asked how fast he was traveling in relation to the speed limits, Officer Kuss admitted that he was not watching his speedometer. *Id*. at 8. Moreover, Officer Kuss explained that he calculated his own speed during the incident by use of his car video only "[w]hen [he] received notice of the [suppression] hearing." *Id*. at 12. Again, after the fact, the officer calculated only his own speed and did not calculate Appellee's speed. *Id*. at 13. In light of these facts, we are constrained to conclude that the officer did not possess the requisite probable cause to stop Appellee's vehicle for a speeding violation.

We next address whether Officer Kuss had probable cause to stop Appellee's vehicle for failure to properly remain in her lane of traffic. Our review of the record reflects that Officer Kuss testified that from a distance of about thirty feet, he saw Appellee's vehicle "go onto the fog line" one time, and "go onto the double yellow line" one time. N.T., 11/10/14, at 9, 14. The officer indicated that he did not know "the distance between when Appellee's vehicle hit the fog line and then later when it hit the double yellow line." *Id*. at 19. Furthermore, the officer could not state whether there were other vehicles traveling in the opposite direction when Appellee's vehicle drove onto the double yellow line. *Id*. at 18. Hence, we must conclude that the trial court did not err in determining that Officer Kuss lacked probable cause to stop Appellee's vehicle for a violation of driving on

roadways laned for traffic under 75 Pa.C.S. § 3309(1). Therefore, the trial court properly granted Appellee's motion to suppress.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/5/2016